IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGIANNA HANRAHAN, IRA<br><br>   Plaintiff,<br><br>   v.<br><br>HEWLETT-PACKARD COMPANY, et al.,<br><br>   Defendants | No. C 05-02047 CRB<br><br>**MEMORANDUM AND ORDER** |

This federal securities law class action arises out of the announcement of Hewlett-Packard Company's proposed merger with Compaq Computer Corporation ("Compaq"). Plaintiff claims defendants unlawfully failed to disclose that director Walter B. Hewlett ("Hewlett") personally opposed the merger, notwithstanding his vote as a director in favor of the transaction. Now pending before the Court is defendants' motion to dismiss. After carefully considering the papers filed by the parties, and having had the benefit of oral argument, defendants' motion dismiss is granted without leave to amend.

## ALLEGATIONS OF THE COMPLAINT

In May 2001 Hewlett-Packard Company ("HP") Chief Executive Officer Carly Fiorina ("Fiorina") advised the Hewlett-Packard Board of Directors of a potential merger with Compaq in May 2001. April 7, 2006 Complaint ("Complaint") at ¶ 26. Board member Hewlett (the son of HP co-founder William Hewlett), responded that the merger was not a

good idea. Id. at ¶ 30. Hewlett attended Board meetings at which the merger was discussed on May 18, June 24, July 20, August 6, August 25, August 31 and September 3, 2001. Id. at ¶ 31. At each meeting Hewlett expressed his belief that the merger was not in the shareholders' best interest. Id. Fiorina was present at each of the meetings. Id. at ¶ 32. Hewlett's opposition included statements such as, "'I don't think this is the right choice,'" id. at ¶ 43, and "'It sounds like a bad idea.'" Id. at ¶ 44.

At the August 31, 2001 Board meeting, HP's counsel advised the Board that the merger agreement would require unanimous Board approval. Id. at ¶ 53. Counsel explained that if the Board was divided about the merger, "it would give investors one more reason to worry." Id. at ¶ 54. Further, unanimous approval would help the "'optics' of the deal." Id. at ¶ 55. Hewlett responded that the Board's insistence on unanimity was placing him in a difficult position. He understood that the only merger issue left to be negotiated was the price HP would pay for Compaq (the "exchange ratio"), and he was concerned that if he voted against the merger, HP would have to pay a higher price for Compaq. Because "he believed that the merger was certain to be approved by the Board without his vote and because he believed it was in the best interests of HP stockholders to negotiate the best possible price for Compaq if the proposed merger were to be submitted to a stockholder vote, Mr. Hewlett determined to vote for the proposed transaction as a director and give stockholders the opportunity to make their own decision." Id. at ¶ 58. Accordingly, at the September 3, 2001 Board meeting, Hewlett voted in favor of the merger. Id. at ¶ 60. At the same time, he told the meeting attendees that "if the [shareholder] vote were to occur that day, he would vote against the proposed merger as a stockholder." Id. at ¶ 58.

That same day HP issued a press release announcing the merger. The press release stated that the Merger Agreement had been "unanimously approved by both Boards of Directors." Id. at ¶ 63. The next day HP filed a Form 8-K with the SEC in connection with the merger, and attached the September 3 press release as an exhibit. Id. at ¶ 64. The Merger Agreement itself was also attached as an exhibit. The Agreement recited, among other

2

things, that the Board had unanimously determined that "the Merger is fair to, and in the best interests of, HP and its stockholders and declared the Merger to be advisable." Id. at ¶ 65.

The price of HP's publicly-traded shares fell on news of the merger. Id. at ¶¶ 77-80. The media also reacted negatively to the announcement. Id. at ¶¶ 81-94.

On November 6, 2001, Hewlett issued a press release announcing his opposition and the opposition of his family (who together controlled 15 percent of the voting shares) to the merger. Id. at ¶ 113. In response to Hewlett's announcement, the price of HP stock rose. This increase occurred because the investing public believed Hewlett's opposition made it less likely that the merger would occur. Id. at ¶ 117. The Court takes judicial notice that despite Hewlett's vigorous opposition, including several unsuccessful lawsuits, the merger was consummated.

The Complaint makes claims against Fiorina and HP for violation of Section 10(b) and 20(a). The class is defined as all those who sold HP shares between September 3, 2001 and November 6, 2001. The gravamen of the allegations is that defendants' statements that the Board had unanimously approved the merger were materially misleading because defendants knew that despite his vote in favor of the merger as a director, Hewlett opposed the merger; in other words, defendants had a duty to disclose Hewlett's opposition. Plaintiff claims that defendants failure to do so artificially deflated the price of HP stock thereby injuring the sellers during the class period.

**PROCEDURAL HISTORY**

On November 3, 2003, nearly two years after Hewlett announced his opposition to the merger, plaintiff filed this class action in the United States District Court for the District of Connecticut, and, pursuant to the PSLRA, caused notice to be published in *Investor's Business Daily*. Plaintiff subsequently filed a motion for appointment as lead plaintiff, approval of her selection of lead counsel, and consolidation of subsequently filed related cases. No other class members sought appointment as lead plaintiff.

Around the same time, defendants moved to transfer venue to this District and requested that the court defer ruling on the appointment of lead plaintiff motion until after

3

the resolution of defendants' motion to transfer. Over a year later the court granted defendants' motion to transfer venue to this District, and per the defendants' request, did not rule on the other motions.

Plaintiff subsequently renoticed her motion for appointment as lead plaintiff. Again, no other class members sought appointment. Defendants responded by arguing that plaintiff's notice to the class was inadequate. The Court agreed and denied plaintiff's motion. Plaintiff subsequently provided new notice of the lawsuit and again moved for appointment of lead counsel. Again, no other class members came forward seeking appointment as lead plaintiff. The Court granted the motion and ordered plaintiff to file her amended complaint. Now pending is defendants' motion to dismiss.

## PLEADING STANDARD

To state a claim under Section 10(b), plaintiffs must allege: (1) a misstatement or omission (2) of material fact (3) made with scienter (4) on which plaintiffs relied and (5) which proximately caused their injury. See DSAM Global Value Fund v. Altris Software, 288 F.3d 385, 388 (9th Cir. 2002). Plaintiffs' complaint must also satisfy the pleading requirements of the PSLRA.

"The PSLRA significantly altered pleading requirements in private securities fraud litigation by requiring that a complaint 'plead with particularity both falsity and scienter.'" Gompper v. Visx, Inc., 298 F.3d 893, 895 (9th Cir. 2002) (citation omitted). "A securities fraud complaint must now 'specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.'" Id. (quoting 15 U.S.C. 78u-4(b)(1)). To plead scienter with particularity, "the complaint must 'state with particularity facts giving rise to a *strong* inference that the defendant acted with the required state of mind.'" Id. (quoting 15 U.S.C. 78u-4(b)(2)). In determining whether a plaintiff has sufficiently pled scienter, a court "must consider 'whether the total of plaintiffs' allegations, even though individually lacking, are sufficient to create a strong inference that the defendants acted with

4

deliberate or conscious recklessness." Nursing Home Pension Fund, Local 144 v. Oracle Corp., 380 F.3d 1226, 1230 (9th Cir. 2004).

"On a motion to dismiss, the reviewing court must accept plaintiff's allegations as true and construe them in the light most favorable to the plaintiff." Gompper, 298 F.3d at 896. Under the PSLRA, however, "the court ultimately reviews the complaint in its entirety to determine whether the totality of facts and inferences demonstrate a strong inference of scienter." Id. "[W]hen determining whether plaintiffs have shown a strong inference of scienter, the court must consider *all* reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs. District courts should consider all the allegations in their entirety, together with any reasonable inferences that can be drawn therefrom, in concluding whether, on balance, the plaintiffs' complaint gives rise to the requisite inference of scienter." Id. at 897.

## DISCUSSION

The securities laws "impose a duty to disclose material facts that are necessary to make disclosed statements, whether mandatory or volunteered, not misleading." Hanon v. Dataproducts Corp., 976 F.2d 497, 504 (9th Cir. 1992). Defendants do not, and cannot, argue that Hewlett's view of the merger was immaterial; instead, the principal issue is whether defendants' failure to publicize Hewlett's oral opposition to the merger rendered defendants' literally true statements about the Board's unanimous approval of the merger misleading.

Plaintiff first contends that the September 3, 2001 press release was misleading because it "touted" the unanimity of the Board of Directors. In fact, the first sentence of the sixth paragraph of the press release reads: "Under the terms of the agreement, unanimously approved by both Boards of Directors, Compaq shareowners will receive 0.6325 of a newly issued HP share for each share of Compaq, giving the merger a current value of approximately $25 billion." Complaint, Exh. B. This statement is literally true: HP's Board --including Hewlett--unanimously approved the terms of the agreement.

5

Plaintiff responds that even a statement that is "literally true can be misleading and thus actionable under the securities laws." Brody v. Transitional Hospitals, Corp., 280 F.3d 997, 1006 (9th Cir. 2002). The press release, however, was not misleading: it merely stated the terms of the agreement and that the Board had unanimously approved those terms. Hewlett had approved those terms, even if he advised the Board that as a shareholder he would most likely vote against the merger. Plaintiff does not cite any case that suggests a publicly-traded company cannot report the accurate fact that a board of directors has unanimously approved some action when one board member who voted for the action has expressed reservations or even opposition to the action. Such a ruling would greatly expand the reach of the securities laws.

The First Circuit's opinion in Cooperman v. Individual, Inc., 171 F.3d 43 (1st Cir. 1999) is instructive. In connection with an initial public offering, the defendant company publicly announced that it was pursuing a certain business strategy. It did not disclose, however, that its founder and chief executive officer ("CEO") disagreed with that strategy and, shortly after the statement was made, the officer resigned as a result of the disagreement. The court held that the company had not been obligated to disclose the CEO's dissent: "[d]isclosure of the business strategy supported by a majority of the directors did not obligate defendants also to disclose information about the extent to which each individual Board member supported that model." Id. at 51. "More specifically, disclosure of the business strategy supported by the majority of the Board did not obligate defendants also to disclose the fact that [the CEO]–a distinct minority of a multi-member Board–opposed that strategy." Id. Simply put, the disagreement did not render the disclosure incomplete or inaccurate. Id. at 52.

Here, disclosure of the accurate fact that all HP Board members had approved the terms of the merger agreement similarly did not obligate defendants to disclose the specific reasons each Board member, including Hewlett, voted in its favor. Hewlett's personal view of the merits of the merger did not render defendants' accurate statement of the Board's vote incomplete or inaccurate.

6

Plaintiff's reliance on New Jersey v. Sprint Corp., 314 F.Supp.2d 1119 (D. Kan. 2004), is unavailing. In that case the defendants publicly stated that one goal of the company was pursuing was the long-term employment of two of its executives. At the time the defendants made the statement, however, the defendants were contemplating terminating the employment of those same two executives. Therefore, the omitted information made the public statement false: the company was not pursuing the executives' long-term employment; instead it was contemplating the termination of their employment. Id. at 1131-32. Here, in contrast, the undisclosed information--Hewlett's expressed opposition to the merger--did not negate the accuracy of what was disclosed; namely, that all directors had voted to approve the terms of the merger.

Defendants' submission of the merger agreement itself to the SEC also did not create a duty to disclose Hewlett's personal opposition to the merger. Section 3.15 of the agreement states:

> 3.15 BOARD APPROVAL. The Board of Directors of HP has, by resolutions duly adopted by unanimous vote at a meeting of all Directors duly called and held and not subsequently rescinded or modified in any way (the "HP BOARD APPROVAL") has duly (i) determined that the Merger is fair to, and in the best interests of, HP and its stockholders and declared the Merger to be advisable, (ii) approved this Agreement, and (iii) recommended that the stockholders of HP approve the Stock Issuance and directed that such matter be submitted to HP's stockholders at the HP Stockholders' Meeting.

Complaint ¶ 65. Hewlett voted in favor of the agreement and this particular language. Plaintiffs theory appears to be that despite Hewlett's vote, defendants should not have submitted the merger agreement to the SEC without first modifying the agreement and taking a new vote. Plaintiffs' theory is unprecedented and unpersuasive. Plaintiffs cite no law, and the Court is aware of none, that suggests that when a director votes in favor of a written agreement a company is under a legal obligation to modify the language of the agreement to reflect the views expressed orally by that director.

//
//
//
//

7

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss the Complaint in its entirety is GRANTED.  The dismissal is with prejudice as no amendment could cure the fatal laws in the Complaint.

**IT IS SO ORDERED.**

Dated: June 16, 2006

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE